

# AMENDMENT



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVELYN GRAHAM   Plaintiff             14 Civ. 3192(PAE)
   -v-

MACY'S, INC.   Defendant

PAUL A. ENGELMAYER, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/28/15

Plaintiff Evelyn D. Graham, proceeding *pro se*, brings claims of failure to accommodate, discriminatory treatment, and retaliation against Macy's, Inc., under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12112-17. Graham seeks a motion to amend case pursuant Federal Rules of Civil Procedures 15(a)(1) of original amendment. Plaintiff failed to state claim pursuant to Federal Rules of Civil Procedures in effect in July 2009. See *John Millner v David Diguglielmo, et al.* No. 08-4905.

Graham is requesting that amendment be submitted to the courts because there were additional facts that were needed to be filed pursuant to 42 U.S.C. Judge Paul A. Engelmayer provided plaintiff permission to do so.

**Background**

Graham is a 51 year old female who suffers from Arthritis and Bipolar Disorder. Because of her arthritis, she cannot stand or walk for extended periods of time. On October 17, 2007, Graham began working as a Bridal Consultant. Graham alleges that she was a hard working and **successful** employee "Who gain a substantial amount of business for the company. However, Macy's failed to accommodate her disabilities. Graham was also subjected to harassment for 5 years.



# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Failure to Provide Reasonable Accommodations | pg2 |
| 2. | Failure to Provide Reasonable Accommodations | pg3 |
| 3. | Retaliation | pg3 |
| 4. | Harassment and Retaliation | pg4 |
| 5. | Unfair Labor Practices | pg5 |
| 6. | Harassment and Retaliation | pg6 |
| 7. | Failure to Provide Accommodations | pg7 |
| 8 | Retaliation | pg7 |
| 9 | Hostile Work Environment | pg8 |
| 10 | Retaliation | pg8 |
| 11 | Discrimination | pg8 |
| 12 | Unfair Labor Practices | pg8 |
| 13 | Retaliation | pg9 |
| 14 | Discrimination | pg9 |
| 15 | Failure to Provide Reasonable Accommodations | pg10 |
| 16 | Discrimination | pg10 |
| 17 | Failure to Provide Reasonable Accommodations | pg11 |
| 18 | Unfair Labor Practices | pg11 |
| 19 | Discrimination | pg11 |
| 20 | Hostile Work Environment | pg11 |
| 21 | Retaliation | pg11 |
| 22 | Unfair Labor Practices | pg12 |
| 23 | Discrimination | pg12 |
| 24 | Hostile Work Environment | pg12 |
| 25 | Retaliation | pg12 |
| 26 | Failure to Accommodate | pg13 |
| 27 | Discrimination | pg14 |
| 28 | Failure to Accommodate | pg14 |
| 29 | Unfair Labor Practices | pg15 |
| 30 | Hostile Work Environment | pg15 |
| 31 | Discrimination | Pg15 |

This pattern of harassment included taking away Graham's commissions, denying her access to her paychecks for most of 2008, allowing managers and staff to take advantage of her. **I declare under penalty for perjury that the foregoing is true and correct.**

### 1. Failure to Provide Reasonable Accomodations

Macy's failed to provide Graham with reasonable accommodations in 2011, 2012 & 2013 (see Macy's Leave of Action forms). 2012 & 2013 had the same diagnosis, yet Macy's discriminated against Graham by allowing her returning to work in 2012 within four days (see Dotson's sworn statement) and in 2013, Graham was discriminated against by Nixon, whose only concern were Graham's episodes! Graham was forced to resign because Macy's refused to place her back on their schedule. Macy's was very much aware of this fact. Furthermore, Graham's doctor requested a reasonable accommodation request for Graham's Arthritis which Macy's failed to honor. The reasonable accommodation for 2011 requested that Graham not stand for more that 30 minutes, stoop, bend, and lift packages and place stock on the floor as needed.

Graham's Sales Consultant position as of 3/11/11 stated that Graham would have to be standing on the selling floor 100% of her shift and perform the above duties. (See Macy's Sales Consultant job description). Graham is considered a "qualified" employee under the ADA Act of 1990 for her Arthritis. Graham also qualifies under ADA as a "qualified" employee because her Bipolar disorder, Graham either sleeps too late or not at all. Graham has difficulty concentrating, cries a lot and goes into a very deep depression as a direct result of being used for 5 years and then being treated even worse by Macy's legal team and staff. Graham's mother and husband passed away and further exacerbated Graham's already horrific treatment while working at Macy's. Graham shuts down until she goes back into "remission"

**I declare under penalty for perjury that the foregoing is true and correct.**

2. **Failure to Accommodate and Retaliation**

When Graham is out of remission, she is unable to complete her housework, write, enjoy doing things she loves, cannot concentrate and stays at home doing absolutely nothing; as Graham told Nixon, who Graham had never met. Nixon was supposedly having a telephone conference with Graham to discuss reasonable accommodations. Another stranger Graham had never met listened in on the discussion; totally violating Graham's right to privacy. According to *Hummel v Ena Galeed Cheese Factory*, U.S. District Court, denied an employer's motion to dismiss because that employer "failed to show that an employee called risk to himself and others.

The court also stated that, "direct threat must be based on objective evidence, not unfounded fear or generalizations and stereotypes". Had Macy's known this; they would have also realized that Macy's was authorized to have Graham take a complete medical exam to assess the above. Instead, Graham was harassed by Nixon on 11/20/13, 11/27/13 & 12/2/13; successfully causing Graham to not be paid for Nixon's calls and before her LOA was over with 11/16/13! Nixon was well aware of the fact that Graham could not return to work without Nixon setting up Graham's reasonable accommodation that was similar to 2012. Section 503 of the Rehabilitation Act of 1973 supports the above. Once again, Nixon refused to place Graham back on Macy's schedule and because Graham was tired of the harassment and being treated horribly, Graham submitted resignation to Macy's at offices, Herald Square, and Corporate in Ohio, certified mail, right before Nixon called Graham on 11/27/13. (See letter & receipt)

Macy's was notified each time Graham went on a LOA. ADA states that "employers are forbidden to request the same information that was already on file." Had Macy's followed up on Graham's March 2011 reasonable accommodation request, they would have known that Graham had requested one and that she should have been reassigned. According to ADA 29 C.F.R..R.R.E. 1630:9, "It is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise "qualified" employee with unless such covered entity can

demonstrate that accommodation would impose an undue hardship on the operation of its business". Macy's also failed to initiate an informal process that also could have been used to identify Graham limitations resulting for her disability and potential reasonable accommodation that could overcome those limitations. **I declare under penalty for perjury that the foregoing is true and correct.**

### 3. Harassment and Retaliation

Ignored by Nixon, Fox v. General Motors, states that "A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule and insult" as evident in the 5 years of reprehensible abuse that Graham was subjected to before and after notifying Macy's Global Compliance Line, the last part of Macy's Complaint Process; according to Macy's EEO policy. Graham's manager, Dotson called her on 11/30/13 already aware that Graham was on a LOA, yet she failed to call Graham on her regular work day, Tuesday, 5/28/13. Dotson asked Graham why wasn't she at work because they had no consultants on duty! Dotson also stated that she didn't remember giving Graham the day off.
These calls were similar to the harassing questions and answers Graham was asked when she had to call out sick.

### 4. Unfair Labor Practices and Hostile Work Environment

Department managers would tell Graham that they didn't have consultants on duty anytime Graham had to call out because her legs were hurting. Dotson would tell Graham to take her pain pills and come in! Another manager would get upset and tell Graham that she was messing up their schedule and that they didn't want Graham to come in "doped up". Finally, other managers who were told that Graham could make a last minute sale would; tell Graham, when she had to call out sick, that they did not have any consultants on duty. When Graham arrived the next day, she was told that there were other consultants working that night, placing Graham under even more pressure. She did not eat or sleep well, not because she was a night owl per say but she wasn't able to; when Graham finally did go to sleep, she would have to get up in a couple of hours.

Graham was only able to work because it was a regular routine, good for bipolar stability; with the exception of Graham's swollen feet and knees that occurred more regularly then not. Due to some

childhood issues, Graham found it better not to complain too much because no one cared and felt inappropriate guilt until she could not take it anymore. **I declare under penalty of perjury that the foregoing is true and correct.**

### 5. Harassment and Retaliation

This happened as soon as Graham called Macy's Global Compliance Line, instead of calling her, Macy's notified its legal department. (See Global Compliance intake form). Graham had followed Macy's "chain of command" only to penalized, feel used and worthless.(see Macy's EEO Policy) She could not understand why Macy's was doing this. The managers in her department did not care if Graham was doing everything; she was making a lot of sales. Graham had provided Global Compliance with detailed information about Graham being late and absent because of her pain and stated that in the 5yrs contrary to Macy's "Point System" Graham was still employed. She told GC about her department, how badly she was treated there, how no one from Macy's HR in to check to see if the staff was complying with Macy's rules and regulations, how Graham received a lot of emails that were sent to corporate office.

Yet, Graham never received any "Macy's Bucks" or acknowledgment from Macy's since 2010. Graham had to use her department's email address just so customers could email managers' compliments for Graham. Her department managers new and old always said that they were going to make sure Macy's awarded Graham's department; just like managers in different departments were doing. Macy's apparently did not visit Graham's department until a customer complained, no one cared if Graham was being mistreated or not. Graham stated that she did not know who Graham could talk to. So, when Graham noticed that Macy's left all of the above information out of her GC complaint for EEOC, Graham knew that something was very wrong (see EEOC's final letter)

### 6. Retaliation, Discrimination and Unfair Labor Practices

Macy's began to do everything in their power to stop Graham's cash flow and was successful until April 28th, 2014 when Graham was finally awarded unemployment benefits. Macy's had used its years of HR experience to challenge Graham's claim only to withdraw its challenge on February 22, 2014. (See unemployment fax) Graham stated that Macy's took its time when it had to complete the necessary forms

stating why they were contesting Graham's unemployment, which was delayed until Graham was scheduled for a

hearing. (See unemployment letters) **I declare under penalty for perjury that the foregoing is true and correct.**

## 7. Discrimination & Retaliation

Graham was finally given an appointment for March 17th, 2014 unemployment stated Macy's had to produce a witness that could explain why Graham was not paid after 11/25/14. Macy did not come to the hearing and Graham had an anxiety attack, as she prepared to go to her hearing. Graham arrived one hour late and had to reschedule. In Graham's opinion, Macy's was still liable because had they not falsely stated that Graham "quit for personal reasons" causing Graham's benefit process to be stopped. Graham would not have had an anxiety attack because she had to fight Macy's for her unemployment benefits. See, *Suma v. Hofstra University* 11-1743 2d 221203, held that under Civil Rights Act of 1964, Titles #7 and #1, "one can be protected activity under the statute's anti-retaliation provision, so to complain of even a single incident of alleged "Harassment".

## 8. Failure to Meet Accomodations, Retailiation and Discrimination

*Rivera v Rochester Geneses Regional Transportation Authority* No. 11-762d 12122012F Federal Statute Law, states that "a mere threat to terminate an employee was not materially adverse under employment discrimination law, but at least under the anti-retaliation provision of Title #7. The 2nd Circuit seems to recognize that such stop be actionable. *Burlington N. v Sanat Recovery Co.* 548 US 53 2006, also holds that "a hostile response to a harassment complaint itself constitutes retaliation". For instance, right after Graham signed up for an unemployment hearing, Macy's was told to produce a witness, Macy's decided to withdraw its claim. Prior to that Macy did what could be classified as a "blatant" and "reprehensible" use of power in that Nixon called Graham on 11/20/13, 11/27/13, 12/2/13 & 12/4/13 without Graham's reasonable accommodations put in place. As if that wasn't enough, Nixon passed Graham's resignation letter over to Jennifer Tejada, another unknown staff member that Graham never met nor heard of. T Tejada called Graham on 12/4/13 from 212-494-7127 at 6:34pm & again on 12/5/13 at 3:32pm; to ask

Graham to come in to discuss her letter because "Macy's felt bad about what happened to Graham". So, in good faith, Graham went in to Macy's Herald Square HR department on 12/9/13, expecting an exit interview but was bombarded with. **I declare under penalty of perjury that the foregoing is true and correct.**

## 9. Failure to Provide Reasonable Accomodations, Discrimination and Harassment

To Graham's credit, she had already questions about reasonable accommodations and sales quotas. The idea was to talk over Graham as she spoke and do everything in Macy's power to get Graham to return to work. Also meaning that if Tejada was desperate enough to lie to Graham about processing Graham's resignation paperwork what else was Macy's trying attempting to do to Graham? Myriam Hallak posed as Jennifer Tejada, who Graham was supposed to be meeting on 12/9/13. However, when Graham saw the woman who was supposed to Tejada, both Graham and the receptionist looked puzzled. It appeared that Macy's was trying to pull a fast one and make Graham appear mentally incapable should Graham attempt to explain her outlandish experience to others. Checked Tejada's information on Link'd and at the end of their brow beating meeting, Hallak wrote the Employee Connection telephone number down on the back of Tejada's card in Hallak's own handwriting.(See business card)

Graham knew that Tejada did not have black curly hair with a Mediterranean skin complexion and checked online. Graham recognized Hallak from their impromptu meeting back in 5/2010 when Graham visited Hallak's office; to discuss the unfair treatment that Graham was experiencing in her department for two and a half years. Hallak called Graham's manager at the time, Josephine Persampier, and they discussed Graham's situation in her department. Persampier was told by Hallak to make sure Graham was treated fairly. As Graham walked out of Hallak's office, Graham told Hallak that she felt like she was working in a "hostile" environment, which Graham had no; idea was illegal according to EEOC. Hallak told Graham "not to say that".

## 10. Retaliation and Failure to Provide Reasonable Accomodations

Hallak noticed Graham's reaction and as soon as Graham arrived at home, she checked, online and noticed that Tejada's picture and information were removed from Link'd as was Hallak's name and position. (See online pictures) At the meeting on 12/9/13, Graham also told Hallak that after 125 + years of

being in retail, Macy's should have invested in its employees as Macy's began paying millions of dollars to remodel its Herald Square store. Graham also said that if one were to lift up Macy's window shade, one would find rotten meat because of the way Macy's treats its employees. Needless to say, that did not go over too well. Graham called the phone number on the back of the card and was rudely told that based on the union contract, Graham had exhausted her sick leave pay and LOA according to Macy's. (See Macy's leave of absence printout). According to Macy's, Graham was supposed to return on 11/16/13. Macy's was trying very hard to state that Graham quit without calling. Once Graham told HR that she was waiting for reasonable accommodations from Nixon, they claimed to have nothing entered on Macy's system and that Nixon knew that she was supposed to call HR to inform them. (See printout of checks) **I declare under penalty of perjury that the foregoing is true and correct.**

## 11. Hostile Work Environment, Discrimination and Unfair Labor Practices.

Graham managed to visit her department and everyone there tried very hard to get Graham to return to her job. However, Graham noticed that the same things that happened before Graham left was still going on and she didn't want to be a part of that. Graham went downstairs with her manager Dotson; who badgered Graham just like Hallak, stated that Graham should call MJ Solino, Dotson's boss and demand changes from her and another new manager, Joey! Graham said she'd think about and went back over to HR to finish talking with Hallak. She was told that Graham would call her on 11/13/13 to let her know if Graham was coming back. Graham called her department to speak with Joey, but Graham did not like the fact that her chest was tightening up. It reminded Graham of how she felt when Graham had to call in late or out sick. Graham called Tejada on 12/13/13 to tell her that Graham did not think it would be good for her physical and mental health to return to Macy's.

Tejada was angry and Graham asked if she was going to put Graham's resignation papers through and Tejada stated that she had to see what "they" had to say. Graham asked who was "they" and didn't get an answer. To support information about not receiving a pay check, benefits being stopped, *Galabya v NYC Bd of Education*, 202 f. 3d,636,641 (2nd Cir.2000) states that "a decrease in salary also therefore warrants front and back pay", especially because Graham did not receive her commissions and Graham's

paychecks. Furthermore, Graham was forced to quit or "constructively discharged". On 12/13/13, Graham called HR on12/13/13 and spoke to Mark who transferred Graham to Erika; who informed Graham that the system had Graham's resignation date listed as 12/13/13. **I declare under penalty for perjury that the foregoing is true and correct.**

Graham told Erika her information was incorrect because Jennifer/ Myriam promised to put them through as the 11/25/13 original date. Graham was transferred to Tejada/Hallak and left a message. Graham's call was returned on 12/13/13 at 5:39pm. 12/16/13, Graham called Employee Connection and spoke to Tracy who informed Graham that she was not listed in Macy's system at all. After harassing Graham and demanding that she tell Tejada why Graham needed her original resignation date, she finally told Tejada that Graham needed it to get help from the government! Once Graham said that and based on what was already done to Graham, she had a feeling that Macy's was going to do other horrible things to Graham.

## 12. Retaliation and Discrimination

Macy's and Local 1-S had already used Graham's Eviction notice against her by destroying her applications, making her wait until Graham's 401k was at the $1000 mark and then when Graham was $1.68 short of a $1000, she was only authorized to take out a loan that had to be paid back so Macy's was deducting an additional $10 out of a $80 check. Graham had no money for any major holiday and couldn't provide a good Thanksgiving, Christmas or New Years' celebration for her first grandchild and Macy's could care less. These attacks were being done to Graham while her EEOC case was be processed and Debra Richards knew all about this as did the other staff members and lawyers. Mrs. Richards did manage to tell Macy's about the $1.68 and miraculously, $3.00 wound up in Graham's account and Macy's had her "personal loan" delivered the next day.

Macy's Cash Pension Department & Merrill Lynch staff had Graham wait 90 days to get a pension application, which had to be sent to Merrill Lynch after the 90 days, Merrill Lynch would forward Graham's paperwork to her to complete, then Graham had to send paperwork back to Merrill Lynch and she was told that Graham would receive her check on April 1st, 2014! (See Macy's cash pension info) Graham hadn't received any money from Macy's since November 16th, 2013. Making the

whole process that normally takes 4-6 weeks take 100 days. The problem Macy's had with Graham was that she did not return to work the week after 12/13/13. **I declare under penalty of perjury that the foregoing is true and correct.**

They had already sent fraudulent paperwork to EEOC, because Macy's needed to have their charges dropped to cover up the many lies Macy's submitted to EEOC; Graham looked at Macy's response to EEOC and it didn't look right nor did the lawyer for EEOC question it.

**13. Failure to Provide Reasonable Accommodations, Unfair Labor Practices and Retaliation**

Considering that Graham provided so much evidence against Macy's from time slips to theft of commission. Graham will include the documents to cover her claims. Graham noticed that she received a letter from Macy's dated 12/5/13 asking Graham's doctor without Graham's permission to complete another Reasonable Accommodation Certification Form. (See RA form) According to ADA, "an employer must obtain a release from the individual to permit his/her doctor to answer questions". "The release should be clear as to what information will be requested. Employer must maintain confidentiality of all medical information collected during this process; regardless of where the information comes from."

Macy's failed to meet up with Graham 3 weeks before her return to EEOC, submitted a letter to EEOC dated 11/11/13 requesting that their charges be dropped, Nixon called Graham on 11/20/13 and Tejada/Hallak met with Graham, a letter dated 12/5/13 was mailed out to & another dated 12/11/13 explaining Macy's Reasonable Accommodation Policy and to cover all bases, Graham had to return when she did not, Macy's illegally refused to process Graham's paperwork, holding it until they could fix their illegal acts. Having gone through extreme mental anguish even as Graham is preparing this amendment, Macy's knew that it was supposed provide Graham with reasonable accommodations whether she was full time, flex time or even part time.

**14. Failure to Provide Reasonable Accommodations and Discrimination**

The 17.5 hours Macy's stated that were all that Graham's doctors told them, did not mention anything about Graham's claim about breaks nor is it written anywhere. How can Macy's claim that

Graham had breaks when it made no mention of it to Graham; how much time she was supposed to be out on a break for? Macy's full time, flex time and part time staff often their meal breaks listed be it for 60 minutes or 30 minutes. Graham's break is not. According to EEOC Regulation, "any failure to provide reasonable accommodations for disability is necessarily because of disability and no proof or particularizing bias animus is required, thus an employer that knows of disability yet fails to make accommodations violates ADA".

According to *Mendez v Gearn* (DC N. Calif, 02/03/97)8AD CAS 1181, "when a decision maker excludes individual on basis of disability, without gathering and carefully examining relevant evidence regarding disability and likelihood of harm, it must be assumed that exclusion was based on unfounded presumptions about disability . "To exclude an individual on basis without determining whether he is otherwise "qualified" with or without reasonable accommodations violates the Rehabilitation Act of 1973. Needless to say, Macy's did violate ADA policies and the Rehabilitation act. It also displayed rephensable behavior with total arrogance and to illustrate Graham's point, *EEOC v Federal Express Corp* 513F.3d 360(4th Cir 2008) involved a deaf cargo handler who's employer instead of accommodating him did not and higher management officials acted reprehensibly with respect to the employee's accommodation needs. **I declare that under penalty for perjury that the foregoing is true and correct.**

### 15. Failure to Provide Reasonable Accommodations, Retaliation and Discrimination

Federal Express refusal and failure to provide reasonable accommodations, did not result from an isolated incident so its employee was justified in receiving punitive damages, "Employee's disability was always known as was Graham's Arthritis diagnosis in 2011 and because Macy's only cared about making money, Graham was ignored. Federal Express' employee reasonable accommodations were ignored as was Graham's Osteoarthritis. His supervisors were also aware of The ADA Mandate and like Macy's, acted unlawfully. An employer can not be excused for not following the ADA Statutes and in Graham's case, blame their Lease department for mistreating Graham, a Macy's employee on Macy's payroll. ADA