```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/28/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
EVELYN GRAHAM,                                            :
                                                          :        14 Civ. 3192 (PAE)
                                    Plaintiff,            :
                                                          :        OPINION & ORDER
                -v-                                       :
                                                          :
MACY'S, INC.,                                             :
                                                          :
                                    Defendant.            :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Evelyn Graham, proceeding *pro se*, brings claims of failure to accommodate,

discrimination, and retaliation against Macy's, Inc. ("Macy's") under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–17.  Macy's moves to dismiss Graham's

Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, Macy's motion is granted, and this action is dismissed with prejudice.

I.      **Background**

        A.      **Facts**[1]

        Graham, age 51, suffers from arthritis and bipolar disorder.  AC 1.[2]  The arthritis inhibits

her ability to stand or walk for long periods of time.  *Id.*  Her bipolar disorder causes Graham to

---

[1] This account is drawn from Graham's Amended Complaint, Dkt. 18 ("AC"), the documents
attached thereto, and, because Graham is *pro se*, factual allegations made in her opposition
papers.  *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).  The documents attached to the
Amended Complaint fill in significant details, clarify Graham's allegations, and provide
additional facts relevant to her claims.  The Court has construed the facts in the manner most
favorable to Graham and has attempted to present her factual allegations in the most logical and
chronological manner.

[2] On ECF, the Amended Complaint contains 11 exhibits.  However, these 11 files do not appear
to correspond to the start or end of any particular underlying document; the first nine exhibits are

sleep too late or not at all.  *Id.* at 3.  When she is not in "remission," she cannot do housework, concentrate, or do things she loves, and she "stays at home doing absolutely nothing."  *Id.* at 4.

Graham began working for Macy's in 2007.  *Id.* at 25.  Starting in 2008, she worked as a bridal consultant in the bridal salon at the Macy's Herald Square location in New York, NY.  *Id.* While employed at Macy's, Graham took several medically related leaves of absence.  *See id.* at 4.  One ended in June 2012, when Graham returned to work with the doctor-ordered restriction that she work at most 17.5 hours per week.  *Id.* at 19, 21, 27.  Graham's final leave began May 28, 2013.  *Id.* at 17.  This leave of absence was supported by a medical certification form completed by Graham's physician, Dr. Rhodes Adler, in July 2013.  *See id.* at 98–101.  Dr. Adler recommended an extended leave of four months commencing May 28, 2013.  *See id.* at 99.  Dr. Adler further specified that when Graham returned to work she would need to work no more than 17 hours per week.  *Id.* at 100.  In October 2013, Dr. Adler submitted another form to extend the period of medical leave through December 1, 2013, again stating that Graham would need to work no more than 17 hours per week when she returned.  *Id.* at 97.  Graham alleges, presumably based at least in part on this and similar forms, that Macy's was aware of her disability and was notified whenever she took a leave of absence.  *Id.* at 4, 12.

Graham's May 2013 leave stemmed from her frustration with Macy's response (or lack thereof) to complaints she levied with its third-party compliance company, Global Compliance. *See id.* at 17, 108.  Specifically, Graham called "Macy's Employee Connection" on April 24, 2013 to report mistreatment in her workplace, and was referred to Global Compliance.  *Id.* at 17. According to Global Compliance records, which Graham attaches to the Amended Complaint,

---

all 12 pages in length.  Therefore, the Court will consider all of Dkt. 18 together as one file, totaling 129 pages, and will refer to page numbers according to their location within that 129-page file.

Graham complained that management "forced her to work additional hours because she always agrees to work overtime," such that she "normally works 23 to 28 hours each week," instead of 17 hours as prescribed by her doctor. *Id.* at 54. Graham also complained that, on April 23, 2013, she had called in sick, but unspecified managers "attempted to pressure her to come into work." *Id.* The Global Compliance records reflect that, between May 7 and June 15, 2013, Graham called four times to follow up and was told each time that Macy's would be notified of her complaint. *Id.* at 54–55. Graham alleges that Macy's failed to investigate her claims and instead notified its legal department. *Id.* at 6, 17. She also alleges that Macy's failed to contact her as required by Macy's own procedures. Graham Br. 7. Finally, she alleges that, on May 30, 2013, shortly after her leave began, her manager called her and complained that Graham had not been given the day off, causing Graham "irreplaceable harm." *Id.* at 8.

On July 19, 2013—a couple of months into her leave—Graham filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC complaint"), which is attached to the Amended Complaint. *See* AC 16–17. In her EEOC complaint, Graham alleged that she had been "subjected to harassment" and "taken advantage of" because she is a hard worker who gains substantial business for the company. *Id.* at 16. Graham also alleged that she had been discriminated against, subjected to retaliation, and not accommodated. *Id.* As to the lack of accommodation, Graham alleged that, despite her inability to stand and walk for extended periods, she was "continuously" asked to fill in for absent co-workers and even had to work full-time hours. *Id.* Further, she alleged that she had been "unjustly" denied commissions for products she had sold, and denied "due breaks." *Id.*; *see also id.* at 13 (alleging that Macy's did not remit to her commissions she was owed).

3

Graham was due to return from leave in late November 2013. Graham has produced a letter from Macy's dated November 5, 2013, which notes that Graham's leave would end November 24, 2013 and instructs her on what she needed to do to return to work or to extend her leave. *Id.* at 18. On November 20, 2013, while Graham remained on leave, she was contacted by Nadine Nixon, a Macy's Human Resources employee, about her imminent return to work. *See id.* at 4. According to Graham, in this and subsequent calls, "Nixon refused to place Graham back on Macy's schedule." *Id.* It appears that Graham wanted something "similar to 2012," *i.e.*, the schedule that she worked that year. *Id.*

Graham has also produced a resignation letter dated November 25, 2013. *Id.* at 40. The letter evinces Graham's dissatisfaction with the November 20 call with Nixon. Graham complained, *inter alia*, that Nixon's questions were insulting and invasive; that Nixon did not discuss a schedule with Graham; that Graham had never met Nixon or another HR manager on the call; and that this other manager never said anything. *See id.* at 43. Graham says that her decision to resign was influenced by having a person she had never met on the call, "coupled with [Nixon's] acting as if [she] had no idea about what I was talking about." *Id.* at 44. Graham elaborates in her Amended Complaint that she was "tired of the harassment and being treated horribly." *Id.* at 4. In her brief, Graham puts a somewhat different spin on this series of events, claiming that she was "not *allowed* to return to work on [November 25, 2013]." Dkt. 24 ("Graham Br."), at 10 (emphasis added).

On November 27, 2013, Macy's received Graham's resignation letter. AC 45. On that date, and on two occasions in early December, Nixon called Graham again. *Id.* at 7. Graham characterizes these calls as harassing, *id.* at 4, and objects that her "reasonable accommodations" were not in place at the time of the calls, *id.* at 7. On December 4 and December 5, 2013,

Graham alleges, she was called by a Macy's staffer named Jennifer Tejada, who told her to "come in to discuss her letter because 'Macy's felt bad about what happened.'" *Id.* at 8.  On December 9, 2013, Graham went to the Macy's Herald Square HR department. *Id.*  This meeting did not go well.  Graham alleges that a woman named Myriam Hallak "posed as" Jennifer Tejada in an attempt to "make Graham appear mentally incapable." *Id.*  Graham told Hallak/Tejada that "if one were to lift up Macy's window shade, one would find rotten meat because of the way Macy's treats its employees," which "did not go over too well." *Id.* at 9.

On December 13, 2013, Graham called Tejada and told her it would not be good for her health to return to Macy's. *Id.*  Also on this date, Graham spoke to another HR employee who informed Graham that her resignation date was listed as December 13, 2013—that same date. *Id.* at 10.  Graham told her this was incorrect and that she had resigned on November 25. *Id.* Graham later told Tejada that she needed the earlier resignation date in order to "get help from the government." *Id.*

Graham has produced notes from the New York Unemployment Insurance Division that recount her statements to that agency. *Id.* at 115–16.  According to these notes, Graham stated that the impetus behind her resignation was the delay between her call with Nixon on November 20 (in which she was "told that they would accommodate her restrictions and would get back to her") and a call on November 27, 2013 from Tejada (not Nixon) telling her to come in on December 4 to discuss her accommodation. *Id.* at 116.  Graham alleges that Macy's "failed to initiate an informal process that also could have been used to identify Graham['s] limitations resulting for [sic] her disability and potential reasonable accommodation that could overcome those limitations." *Id.* at 5.

After her resignation, according to Graham, Macy's did "everything in their power to stop Graham's cash flow" until Graham was finally awarded unemployment benefits in April 2014. *Id.* at 6. This included stating that she had quit for personal reasons, which Graham says was false. *Id.* at 7; *see also id.* at 106 (letter dated January 13, 2014 stating that Graham "voluntarily quit for personal reasons"). On January 22, 2014, however, a Macy's agent withdrew the company's protest of Graham's eligibility, as evidenced by a letter attached to the Amended Complaint. *See id.* at 107.

On January 31, 2014, the EEOC mailed Graham a Dismissal and Notice of Rights, which noted that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes" and gave Graham the right to sue within 90 days of receipt. *Id.* at 112.

**B.     Procedural History**

On April 25, 2014, Graham filed the initial Complaint in this action. Dkt. 2 ("Compl."). The initial Complaint, like this one, brought claims for failure to accommodate, discrimination, and retaliation in violation of the ADA. On March 23, 2015, the Court dismissed the Complaint with leave to amend. Dkt. 16, *reported at Graham v. Macy's Inc.*, No. 14 Civ. 3192 (PAE), 2015 WL 1413643 (S.D.N.Y. Mar. 23, 2015). The Court dismissed the failure to accommodate claim because the Complaint did not adequately allege that Graham had asked Macy's for accommodations or that Macy's refused her request. *See id.* at *3. The discrimination claim was dismissed because the Complaint did not adequately allege adverse employment actions taken because of Graham's disability. *See id.* at *4. Finally, the retaliation claim was dismissed because the Complaint did not adequately allege adverse employment action or a causal connection between any such action and a protected activity. *See id.* at *5.

On May 28, 2015, Graham filed an Amended Complaint with attached exhibits. Dkt. 18 ("AC"). On June 22, 2015, Macy's filed a motion to dismiss, Dkt. 21, and a supporting

6

memorandum of law, Dkt. 22 ("Macy's Br."). On July 21, 2015, Graham filed an opposition

brief. Dkt. 24 ("Graham Br."). On August 5, 2015, Macy's filed a reply brief. Dkt. 25

("Macy's Reply"). In October and November 2015, Graham submitted other documents, *see*

Dkts. 26–28, which the Court does not consider as they are untimely.[3] *See Iwachiw v. N.Y. State*

*Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005).

## II. Legal Standards on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving

the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all

reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141,

145 (2d Cir. 2012). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S.

at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] *suggest[s]*,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks

omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules

---

[3] Having reviewed these submissions, however, the Court is satisfied that its decision would be
unaffected by their consideration.

of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted).

## III.   Discussion

Although Graham does not formally label or separate her claims, they fall into three categories: failure to accommodate, discriminatory treatment, and retaliation under the ADA. *See* AC 1 (asserting these three causes of action).

As a threshold matter, Graham has adequately pled that she suffers from disabilities within the meaning of the ADA.  The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). While the Court earlier held that the initial Complaint provided sufficient factual allegations as to the disabling nature of Graham's arthritis, but not her bipolar disorder, *see Graham*, 2015 WL 1413643, at *3, the Amended Complaint has corrected this deficiency.  Specifically, Graham alleges that her bipolar disorder causes her to sleep too late or not at all.  AC at 3.  And, when Graham is not in "remission," she cannot concentrate, and she "stays at home doing absolutely nothing."  *Id.* at 4.  Therefore, for the purpose of resolving this motion to dismiss, the Court considers both Graham's arthritis and her bipolar disorder to be disabilities within the meaning of the ADA.

### A.   Failure to Accommodate

To state a claim for an employer's failure to accommodate a disability, a plaintiff must adequately allege that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable

8

accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)) (internal quotation marks omitted).

### 1.    Refusal to Make Accommodations

As in its earlier decision, the Court finds the first and third elements of Graham's failure-to-accommodate claim satisfactorily pled.  *See Graham*, 2015 WL 1413643, at *3.  The Court also finds that, unlike the initial Complaint, the Amended Complaint's allegations regarding the employer's notice are sufficient.  Specifically, Macy's personnel were apparently aware of Graham's need for a reduced-work schedule as early as June 2012, as evidenced by statements from Graham's managers to the effect that, at that time, they were informed that Graham could not work more than 17.5 hours per week.  *See* AC 19, 21.

However, as in the initial Complaint, the facts alleged in the Amended Complaint do not adequately plead that Macy's refused Graham such a reasonable accommodation.

Graham's allegations as to refusal to accommodate are these:  As she told Global Compliance in April 2013, she was "forced . . . to work additional hours because she always agrees to work overtime," such that she "normally works 23 to 28 hours each week."  *Id.* at 54. And, as she complained to the EEOC in July 2013, she was "continuously" asked to fill in for absent co-workers and even had to work full-time hours at some point.  *Id.* at 16.

The Court has little doubt that forcing a reduced-hour employee, against her will, to work beyond doctor-prescribed limits of which the employer was aware can constitute a failure to accommodate.  Graham's claim that she was "forced" to work additional hours is undermined,

however, by her acknowledgement that she "always agree[d] to work overtime." *Id.* at 54.[4]  It is difficult to reconcile this statement with her generalized claim that she was somehow "forced" or compelled to work excessive hours. *Id.*  It appears that Graham is trying to suggest that Macy's took advantage of her meekness and agreeability in order to wring additional hours out of her. *See id.* at 5 (alleging that managers would tell Graham that there were no other consultants on duty when she had to call out sick); *id.* at 54 (on one occasion in April 2013, manager "attempted to pressure [Graham] to come into work").  But if Graham, whatever her private preferences, "always agree[d]" to work these excessive hours, *id.* at 54, Macy's can hardly be held legally responsible for refusing to accommodate her.  On Graham's pleadings, a willing employer *and* a willing employee agreed to the hours in question:  Graham nowhere alleges that she resisted the request to work extra hours above the 17 per week that her doctor recommended, or, for that matter, that Macy's ever conveyed to her that she was not permitted to limit her work to 17 hours per week, or that there would be adverse consequences if she declined Macy's invitation to work extra hours.

Had Graham adequately alleged that Macy's had effectively refused to allow her to return from leave by refusing to limit her hours to 17 per week, and thereby refusing to accommodate her disability, she might well have stated a claim of failure to accommodate.  But the allegations in the Amended Complaint do not suggest any unwillingness on Macy's part to accommodate Graham's reduced-work schedule upon her anticipated return in late 2013.  Instead, from the pleadings, it appears that Graham became upset at Macy's HR personnel for some combination

---

[4] The Court also notes that, in statements submitted to the EEOC, Graham's managers similarly asserted that, when Graham worked additional hours, it was because she wanted to do so.  AC 19, 21–22.  In this decision, the Court does not rely on such statements, but rather on Graham's own statements.

of dilatoriness, deceptiveness, and insensitivity.  The most Graham alleges regarding her work schedule is that Macy's "refused to place Graham back on Macy's schedule," a vague—indeed, inscrutable—allegation.  *Id.* at 4.  Graham's general claim that she was "not allowed to return to work" does not clarify this allegation, let alone allege that this refusal was anchored in a refusal to permit her to work only the doctor-prescribed hours.  Graham Br. 10.  Viewing the Amended Complaint in totality, the Court holds, it fails even to suggest a refusal by Macy's to allow Graham to work only 17 hours per week.

### 2.    Failure to Engage in Interactive Process

Graham also alleges that Macy's failed to engage in an "interactive process" to determine reasonable accommodations.  *See* AC 5; Graham Br. 5.

"The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000).  "Liability for failure to provide a reasonable accommodation ensues only when the employer is responsible for a breakdown in that [interactive] process."  *Thompson v. City of New York*, No. 03 Civ. 4182 (JCF), 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006), *report and recommendation adopted*, 2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006), *aff'd sub nom. Thompson v. N.Y.C. Dep't of Prob.*, 348 F. App'x. 643 (2d Cir. 2009) (summary order).  "An employer impedes the process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith."  *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013) (quoting *Bohen v. Potter*, No. 04 Civ. 1039, 2009 WL 791356, at *13 (W.D.N.Y. Mar. 23, 2009)) (internal quotation marks omitted).

Here, Graham's conclusory allegation that Macy's failed to engage in an interactive process is belied by documents attached to her Amended Complaint. These reflect that Graham told the Unemployment Insurance Division that (1) Nixon on November 20, 2013 told Graham that Macy's "would accommodate her restrictions and would get back to her," and (2) Tejeda on November 27, 2013 told Graham to come in a week later to discuss accommodations. AC 116. The factual allegations in Graham's Amended Complaint are not to the contrary: They indicate that what upset Graham about these phone calls is that she found the questions invasive and insensitive. That Macy's employees asked Graham questions in an attempt to understand her need for accommodation is inconsistent with the suggestion of bad faith.

The facts pled as to Graham's in-person meeting later in December similarly do not adequately allege that Macy's was responsible for any breakdown in the interactive process. Even if it were true, for instance, that a woman named Myriam Hallak "posed as" Jennifer Tejeda, *see id.* at 8, the identity of Graham's interlocutor would not affect the substance of the interaction as Graham alleges it transpired. And she does not allege facts about this meeting to the effect that Hallak/Tejeda refused in bad faith to engage with her about accommodations.

### B. Discriminatory Treatment

To state a claim for discrimination on the basis of a disability, a plaintiff must adequately allege that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan*, 711 F.3d at 125 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)) (internal quotation marks omitted).

Although the first three elements are adequately pled, many of Graham's allegations concern slights and impediments far too trivial to constitute adverse employment action. These

include: (1) receiving no "acknowledgment" or "Macy's Bucks" since 2010, *see* AC 6; (2) refusing to process Graham's paperwork, *see id.* at 11; and (3) calling Graham and stating that she had not been given the day off, *see id.* at 5.  Other alleged actions by Macy's are simply too vaguely and conclusorily alleged to support a claim of adverse action.  These include Graham's allegations of (1) "allowing managers and staff to take advantage of her," *id.* at 3; (2) "5 years of reprehensible abuse," *id.* at 5; and (3) playing "games" with her return date, *id.* at 110.

Further, several injuries Graham claims to have suffered are time-barred.  "[A] claimant pursuing claims under the ADA must file charges with the EEOC within 300 days of the purportedly unlawful acts."  *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (summary order) (citing 42 U.S.C. § 12117(a)).  Graham filed her charge with the EEOC on July 19, 2013,[5] *see* AC at 16–17, and so her claims of discrimination are time-barred with respect to any acts before September 22, 2012.  The following allegations are thus time-barred: (1) denial of access to paychecks for most of 2008, *see id.* at 3; (2) giving incorrect paychecks in 2008 and 2009, *see id.* at 87; and (3) cheating Graham out of commissions in 2010 or earlier, *see id.*

As for the remaining alleged adverse employment actions, such as being denied commissions in 2013, *see id.* at 13, the Amended Complaint does not adequately allege that Macy's took any such actions *because of* Graham's disability.  *See, e.g.*, *Sneed v. N.Y.C. Dep't of Parks & Recreation*, No. 10 Civ. 299 (WHP), 2011 WL 4542960, at *3 (S.D.N.Y. Sept. 30, 2011) (dismissing complaint where plaintiff "fail[ed] to allege that any purported mistreatment was motivated by discriminatory animus or ill will based on her disability").  In its earlier

---

[5] In her initial Complaint, Graham alleged that she filed her EEOC complaint on June 11, 2013, *see* Compl. at 3, but the EEOC complaint itself—attached to the Amended Complaint—shows that it was dated July 19, 2013 and received July 23, 2013.  AC 16.

decision, the Court held that the initial Complaint failed to "allege that anyone at Macy's made derogatory comments about Graham's arthritis or that Graham's non-disabled co-workers were treated more favorably." *Graham*, 2015 WL 1413643, at *4. Graham now alleges that one manager "would tell Graham to take her pain pills and come in" when Graham called out sick, and that another would say "they didn't want Graham to come in 'doped up.'" AC 5. But Graham does not plead facts that causally link these undated statements with any materially adverse employment action, such as the denial of commissions. Merely because an employee or employees at some point mocked or dismissed Graham's disabilities does not mean that any later adverse actions taken against her by Macy's were *because of* her disability.[6] *See Inguanzo v. Hous. & Servs., Inc.*, No. 12 Civ. 8212 (ER), 2014 WL 4678254, at *16 (S.D.N.Y. Sept. 19, 2014), *aff'd*, 621 F. App'x 91 (2d Cir. 2015) (summary order) ("[S]tray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority."); *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.").

Therefore, the Amended Complaint fails to state a claim for discrimination.

---

[6] For the same reason, any suggestion that Graham has a stand-alone harassment or hostile work environment claim must fail. *See Thompson v. New York City Dep't of Prob.*, No. 03 Civ. 182 (JCF), 2003 WL 22953165, at *4 (S.D.N.Y. Dec. 12, 2003) (noting that causation must be pled for such claims).

**C.      Retaliation**

To allege a *prima facie* case of retaliation, the plaintiff must allege that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006).

Graham has alleged two potential protected activities: her April 2013 complaint to Global Compliance and her July 2013 complaint to the EEOC.  The Court analyzes these in turn.

**1.      April 2013 Complaint**

Under the ADA, informal complaints to management may constitute protected activity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 n.5 (2d Cir. 2002); *see also Felton v. Katonah Lewisboro Sch. Dist.*, No. 08 Civ. 9340 (SCR), 2009 WL 2223853, at *6 (S.D.N.Y. July 27, 2009).  Such complaints must be sufficiently detailed to put management on notice that plaintiff is alleging a violation of her ADA rights.  *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107–08 (2d Cir. 2011) (Title VII); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (Fair Labor Standards Act).  Graham's April 2013 complaint meets these standards.  According to the Global Compliance records attached to the Amended Complaint, Graham complained that management "refused to give [her] days off and do not accommodate with [her] disability requests."  AC 54.  She further complained that she reported her medical conditions to Macy's personnel, but continued to work longer hours than her doctor recommended.  *See id.*  These complaints were sufficiently detailed to put the recipient on notice that Graham was asserting violations of the ADA.

Graham has also satisfied the second element of a retaliation claim: that her employer was aware of the protected activity.  The same Global Compliance report indicates that "the

15

details of the initial report had been provided to the organization," *i.e.*, Graham's complaint was relayed to Macy's. *Id.* At this stage, this secondhand indication that Macy's had been informed of Graham's grievance suffices to plead awareness.

As for adverse employment action, Graham alleges, *inter alia*, that she was denied commissions she was owed. *Id.* at 13, 16. An adverse employment action is a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d at 720 (internal quotation marks omitted); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (materially adverse employment action in Title VII context is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination"). Such actions include, *inter alia*, a reduction in pay. *See Treglia*, 313 F.3d at 720 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d. Cir. 1999)). Denial of earned commissions constitutes a *de facto* reduction in pay, and could certainly dissuade a reasonable worker from bringing a discrimination charge. Therefore, Graham has adequately pled the third element of her retaliation claim.[7]

The final required element is a causal connection between the protected activity and the adverse employment action. Such a causal connection may be inferred from temporal proximity. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001). The Second Circuit "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). While a four- or five-month gap may not be too attenuated where

---

[7] Other purported adverse actions were not materially adverse. For instance, Graham alleges that Macy's failed to investigate her complaints to Global Compliance. *See* AC 6, 17. But a failure to investigate a protected complaint is generally not a materially adverse employment action. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).

other protected activities and retaliatory actions occur in the interval, *see Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001), courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship. *See Thompson v. Morris Hts. Health Ctr.*, No. 09 Civ. 7239 (PAE), 2012 WL 1145964, at *10 (S.D.N.Y. Apr. 6, 2012) (collecting cases); *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) (same).

Here, Graham complained to Global Compliance on April 24, 2013.  *See* AC 53.  She alleges that she "was not paid her commission from her 5/25/13 sales or anything after that."  *Id.* at 13.  She adds that she had "many bridal customers who placed ½ of their money down for their items and a lot of them were supposed to return in June, July & August of 2013 for their alterations and to complete their payments."  *Id.*  Graham has attached to her Amended Complaint printouts of paycheck records showing that she had the same "year to date" commission-based earnings in June, September, and October 2013—indicating that she was not paid commissions during the summer and fall of that year.  *See id.* at 58, 60–61.  Although Graham is not explicit on this point, her implication is that she was owed commissions during the summer of 2013 but did not receive them.

Were that all the Amended Complaint and attached documents indicated, the Court might have concluded that Graham had adequately alleged that Macy's denied her commissions she was owed within the two months or so after her April 2013 complaint.[8]  However, the Amended Complaint elsewhere undermines that inference.  It alleges, evidently with reference to events in 2008, that Graham "was not paid her commission for 2 months after she started working at

---

[8] The clock may not have started running on April 24, 2013, but at some unknown later date when Macy's was actually informed of Graham's complaint by Global Compliance.

Macy's, Inc." *Id.* at 13; *see also id.* at 13–14 (alleging that Graham's family wanted her to resign in her first year as a sales consultant, which led to Graham "not receiving her commission properly").  And an attached document dated May 13, 2010 similarly alleges that Graham has "been cheated out [sic] my half of commission at times too."  *Id.* at 87.  Finally, Graham's EEOC complaint in July 2013 alleges that "there have been numerous times when the commissions that I was suppose [sic] to get for bridal products I sold, were unjustly taken away from me."  *Id.* at 16.  These allegations indicate that Graham claims that Macy's *repeatedly* failed to pay earned commissions—*i.e.*, that the underpayment of commissions was longstanding and not limited or distinct to the couple of months that followed her Global Compliance complaint and preceded her EEOC complaint.

These allegations undermine any inference of causation based on temporal proximity.  As the Second Circuit has held, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001); *see also Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) ("A plaintiff fails to allege a sufficient causal connection between protected activity and adverse employment action when the protected activity is preceded by significant misconduct, and the employee's gradual efforts to address that misconduct.").  Here, Graham alleges unpaid commissions in 2008 and 2010, and her vague reference in the EEOC complaint to "numerous" unpaid commissions—without reference to time or date—strongly indicates a claim of an ongoing pattern.  Under these circumstances, the causal connection that might otherwise be inferred based on timing alone is severed.  And, because Graham has failed to allege any basis for inferring causation other than timing, Graham has not

18

adequately alleged that her complaint to Global Compliance caused Macy's decision not to pay her commissions.

### 2.     July 2013 EEOC Complaint

Graham's July 13, 2013 complaint to the EEOC also constituted protected activity.  And, at this stage, the Court assumes that Macy's was aware of it.  *See* 42 U.S.C § 2000e–5(b) (providing for notice to employer of EEOC charges).  However, Graham's Amended Complaint fails to suggest a causal connection between her EEOC complaint and any alleged adverse action.

First, Graham fails to allege any materially adverse employment actions in late 2013.  As discussed above, the most that Graham's pleadings indicate is that Macy's employees were insensitive, misleading, or slow-moving.  These lapses do not qualify as adverse employment actions:  They would not dissuade a reasonable worker from bringing a discrimination charge.

Furthermore, the events of November and December 2013 are too remote from the July 2013 complaint to make out a causal connection on the basis of temporal proximity alone.  As noted above, while there is no bright-line rule, two months generally sets the outer boundary of temporal proximity.  Here, Graham makes no allegations regarding developments between July and November 2013 that would justify deviation from this general approach.  Graham's difficulties in securing a "hardship loan" in August 2013, *see* AC 10, 67–69, do not constitute a materially adverse employment action.  And even if they did, Graham herself clarifies, in an attached document from 2014, that Macy's *did* give her permission to take out a "personal loan,"[9] thus apparently relieving Macy's of any responsibility for this development.  *Id.* at 109.

---

[9] Graham seems to protest that this "personal loan" was different from the "hardship loan" she requested, and that Macy's "deducted an additional $10 from [her] weekly paycheck to cover repayment of a loan that [she] never asked for."  AC 109.  These baffling allegations do not suffice to plead adverse employment action.

Graham's allegations as to unpaid commissions are also insufficiently traced to her bringing the EEOC complaint.  The EEOC complaint itself complains of unpaid commissions. *See id.* at 16.  And, as noted, adverse actions that began before a protected activity occurred may not serve as the basis for a retaliation claim.

Thus, despite Graham's conclusory allegation that "Macy's has made my life a total nightmare since [she] complained to EEOC," *id.* at 111, the Amended Complaint does not adequately allege that Graham suffered materially adverse employment action that was caused by her EEOC complaint.

### D.    Leave to Amend

In dismissing the initial Complaint, the Court granted leave to amend, noting that Graham's motion papers contained new allegations that "begin to—although they do not fully— remedy the deficiencies in her Complaint."  *Graham*, 2015 WL 1413643, at *5.  In her Amended Complaint, Graham has reiterated those new allegations, and others.  The Court has held these allegations deficient nonetheless.

A *pro se* plaintiff should generally be granted leave to amend at least once.  *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).  After that, leave to amend may be denied, in the court's discretion, "if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order).

Here, any further amendment of Graham's claims would be futile.  Graham attached to her Amended Complaint voluminous documents relating to her employment by Macy's and her allegations of misconduct.  To a significant extent, these documents *undermined* her claims.  The Court has no reason to conclude that as-yet unaired allegations would save Graham's claims;

instead, it appears that everything has been aired and Graham's claims simply fall short of stating a claim. The Court therefore denies leave to amend.

**CONCLUSION**

For the foregoing reasons, Graham's Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 21 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 28, 2016
       New York, New York